IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| **PAUL D. DORSEY** | * | | |
| | * | | |
| Petitioner | * | | |
| | * | Civil No. | **PJM 12-2998** |
| v. | * | Crim. No. | **PJM 09-0468** |
| | * | | |
| **UNITED STATES OF AMERICA** | * | | |
| | * | | |
| Respondent | * | | |

**MEMORANDUM OPINION**

Paul Dorsey, *pro se*, has filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 [Paper No. 441] and a Motion for Appointment of Counsel [Paper No. 487]. Having considered the Motions and the Government's Opposition to same, the Court will **DENY** them.[1]

**I.**

On June 21, 2010, Dorsey pled guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute Fifty (50) Grams or More of Cocaine Base ("Count One") and a second count of Felon in Possession of a Firearm and Ammunition ("Count Eleven"). At sentencing, the Court found him to have a Total Offense Level of 25 and a Criminal History Category of VI. He was thereupon sentenced to 137 months imprisonment as to Count One, and a concurrent term of 120 months imprisonment as to Count Eleven.

---

[1] Dorsey requests appointment of counsel in connection with his Motion to Vacate.
There is no Sixth Amendment right to counsel to pursue a petition for collateral relief. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987). A district court, however, may provide counsel for an indigent inmate pursuing a petition for habeas corpus when "the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). The court's decision concerning the appointment of counsel will only be considered an abuse of discretion where the petitioner presents "exceptional circumstances." *Garrett v. Elko*, 120 F.3d 261 (4th Cir. 1997).
In the present case, the Court finds that Dorsey is able to articulate his claims and that the claims are not unduly complex. Since the Court finds no "exceptional circumstances" either as to the facts or legal issues in this case, *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (quoting *Cooks v. Bounds*, 518 F.2d 779 (4th Cir. 1975), Dorsey's request that counsel be appointed is DENIED.

On September 19, 2011, Dorsey appealed the Court's sentence. On July 5, 2012, the Fourth Circuit dismissed his appeal, with an effective mandate date of July 27, 2012.

On September 21, 2012, pursuant to a Petition for a Writ of Coram Nobis, the District Court for Calvert County struck one of Dorsey's prior convictions, a January 1, 2011 conviction for Resist/Interfere with Arrest.

On October 9, 2012, Dorsey filed the present Motion to Vacate.

## II.

In his Motion, Dorsey argues (1) that the Court applied an incorrect (more onerous) mandatory minimum term of imprisonment instead of the mandatory minimum established by the Fair Sentencing Act of 2010 ("FSA"), and (2) that the Court should recalculate his Criminal History Category because of the subsequently vacated state court conviction.

Specifically, Dorsey says that his "137 month term should be reduced where the district court's starting place in calculating [his] term of imprisonment was a starting place of a mandatory minimum term of ten (10) years", instead of the five year mandatory minimum in effect as of the time of his sentence. Dorsey then argues that, because one of the state court convictions that was factored into his Criminal History score was vacated subsequent to his sentencing, his Criminal History Category should be recalculated to reflect Category V rather than Category VI status. In consequence, he says, his guideline range of imprisonment should be reduced to 100-125 months from 110-137 months.

In response, the Government argues that (1) the Court should decline to address the merits of the § 2255 Motion because it is an improper vehicle for relief, (2) the Court properly sentenced Dorsey under the amended Guidelines and in fact applied the five year mandatory minimum sentence, and (3) the Court made clear at sentencing that the possible vacatur of

Dorsey's state court conviction would change neither his Criminal History Category nor, in any event, the Court's sentence.

### III.

#### A.

At sentencing Dorsey was found to have an Offense Level of 25. Sentencing Tr. 45:1. As to Count One, Dorsey had agreed in his Plea Agreement that his Base Offense Level was 30, "because at least 50 grams but less than 150 grams of cocaine base (crack)" was involved in the offense. Plea Agrmt at ¶6.a. To be sure, however, this Base Offense Level was revised downward in the Final Presentence Report, as of February 2, 2011, because of subsequent revisions in the Sentencing Guidelines for crack offenses. The new result was a Base Offense Level of 26. Final PSR at ¶24. The parties further agreed that a two-level increase in the offense level was appropriate "because a firearm was possessed". Plea Agrmt at ¶6.c. After a two-level reduction for acceptance of responsibility, and an additional one-level reduction for timely notification of his intention to plead guilty, Dorsey's Total Offense Level was determined to be 25. Final PSR at ¶¶30-31; Plea Agrmt at ¶6.f.; Sentencing Tr. 44:25 – 45:1.[2]

#### B.

Although Dorsey's Motion regarding the applicable mandatory minimum has been made as part of a Motion to Vacate under § 2255, his claim for relief based on the Fair Sentencing Act ("FSA") is better understood as a motion seeking reduction of his sentence under 18 U.S.C. § 3582. *See Rios v. United States*, Civil No. PJM-11-2238, Crim. No. PJM 10-0017, 2012 WL 3775832, at *2 (D. Md. Aug. 29, 2012) (Messitte, J.). As the Office of General Counsel of the

---

[2] In the Plea Agreement Dorsey had also reserved the right to argue that a two-level downward adjustment should apply because he was purportedly a "minor participant" in the offense. The Court rejected that argument at sentencing, finding that "[t]here's no credit for minor role in this offense. At a minimum, the defendant was like all the other confederates, if not more." Sentencing Tr. 45:1-4.

United States Sentencing Commission has suggested, "[t]he proper vehicle for seeking a sentence reduction pursuant to an amendment to the guidelines given retroactive application by the Commission is a motion to reduce sentence pursuant to 18 U.S.C. § 3582." UNITED STATES SENTENCING COMMISSION, CRACK RETROACTIVITY: PROCEDURAL ISSUES 15 (2012), *available at* http://www.ussc.gov/Legal/Primers/Primer_Crack_Retroactivity.pdf (citations omitted); *see also United States v. Chandler*, 534 F.3d 45, 51 (1st Cir. 2008) ("The remedy for defendants who believe they are entitled to such resentencing [under the retroactive revisions to the guidelines for crack cocaine offenses] is to file a motion with the district court seeking relief under 18 U.S.C. § 3582(c)(2)."). Because Dorsey's Motion was filed *pro se*, and because labels assigned to pleadings filed by *pro se* litigants are not determinative of a claim's true nature, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), the Court construes Dorsey's arguments with respect to the FSA as a Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(2), rather than one pursuant to §2255.

## C.

Although the Final PSR incorrectly states that the minimum term of imprisonment on Count One was ten years, Final PSR at ¶84, Defense counsel, the Government, and the Court all agreed at sentencing that in fact a five year sentence, as established by the Fair Sentencing Act, was the applicable mandatory term of imprisonment on Count One. Sentencing Tr. 17:24-18:11. But with the Guideline ranges in dispute here – either the one applicable to an Offense Level of 25 and a Criminal History Category VI, with a range of 110-137 months, or an Offense Level of 25 and a Criminal History Category V, with a range of 100-125 months — the mandatory minimum in this case – five years or 60 months – essentially had no impact on the Court's final sentence. The Court was prepared to sentence well above the new mandatory minimum.

## IV.

Dorsey's other argument, regarding the calculation of his Criminal History Category, is properly addressed pursuant to the terms of 28 U.S.C. §2255, rather than those of the Fair Sentencing Act and 18 U.S.C. §3582.

### A.

Guideline §4A1.1 assigns different numbers of points for different types of convictions, as detailed in subsections §4A1.1(a) – (e). The Final PSR summarized Dorsey's Criminal History and calculated the guideline points attributable to each of his prior adult convictions, per the Guideline. Thus, his total Criminal History points as calculated in the Final PSR was thirteen, determined as follows: two points were awarded for the conviction at Paragraph 39; those points are not in dispute. Three points were awarded for the conviction described at Paragraph 40; those are also not in dispute. Two points were added at Paragraph 61 because his current offenses were committed while he was on probation per §4A1.1(d); those, too, are also undisputed.

Come now the disputed calculations. Four points were derived from six possible points relative to prior convictions set forth in Paragraphs 43, 45, 46, 49, 51, and 52. However, since Sentencing Guideline §4A1.1(c) only permits a maximum of four points to be counted under that subsection, any four of the six points would have served.

At sentencing, Dorsey challenged one of those possible six points under U.S.S.G. §4A1.1(c) on the grounds that he was unrepresented at the proceeding in which he was found guilty. *See* Final PSR at ¶52. And the Court allowed that that particular challenge might be valid. However, the Court noted that there remained at least two other §4A1.1(c) convictions that could take the place of the challenged conviction. Sentencing Tr. 6:11-18, 45:8-13.

Accordingly, the fact that the conviction under Paragraph 52 was not counted would have had no effect on the Criminal History score. It was not then and it is not now of any consequence.

At sentencing Dorsey also challenged the conviction at Paragraph 57, for which two points had been counted pursuant to U.S.S.G. §4A1.1(b).[3] The Court disagreed, finding that Dorsey had not had not met his burden to prove that the conviction at ¶57 was unlawful. *Id*. at 45:8-13. Hence, the final Criminal History Category found by the Court was VI.

However, it was the conviction at Paragraph 57, carrying two points, that was eventually vacated by the District Court for Calvert County. Because discounting that conviction would reduce the Criminal History points to eleven, the resulting Criminal History Category would be a V, not a VI, as the Court found.

**B.**

That fact alone, however, does not entitle Dorsey to a modification of his sentence. Beyond the pure numerical argument, it is his burden to show that his sentence was unlawful on one of the grounds of 28 U.S.C. § 2255. In that respect, §2255 provides that habeas relief should be awarded where:

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255.

If defendant "is successful in attacking [his] state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences." *Custis v. United States*, 511

---
[3] The Court notes that the Government seems to have misapprehended the application of U.S.S.G. §4A1.1. It argues in its brief that the Paragraph 57 conviction only carried one point under §4A1.1(c), as opposed to two. In fact, having carefully reviewed the matter, the Court notes that the actual point total was two, pursuant to §4A1.1(b), rather than one.

U.S. 485, 497 (1994). On the other hand, "if the prior conviction is no longer open to direct or collateral attack in its own right, then the federal prisoner can do nothing more about his sentence enhancement." *United States v. Pettiford*, 612 F.3d 270, 276 (4th Cir. 2010) (citing *Daniels v. United States*, 532 U.S. 374, 382 (2001)). "Vacatur alone does not entitle a petitioner to habeas relief . . . the petitioner must still meet his burden of showing that his sentence is unlawful on one of the specified grounds [of §2255], because only after determining that a sentence is unlawful can the district court vacate and set aside the sentence." *Id.* at 278.

Dorsey has not established that any of the grounds for rendering his sentence unlawful under 28 U.S.C. § 2255 have been met. He does not argue, nor is there any evidence to suggest, that he was sentenced in violation of the Constitution, or that this Court lacked jurisdiction. "[A] nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure" (internal quotation marks omitted). *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999). The Fourth Circuit has held "that [even] a misapplication of the guidelines typically does not constitute a miscarriage of justice." *Id.* at 496. In this case, assuming arguendo that Dorsey's Criminal History Category should have been V instead of VI, his claim does not rise to the level of "miscarriage of justice" needed to constitute a §2255 claim.

**C.**

Dorsey's sentence of 137 months was at the top of a Criminal History Category VI for someone with an Offense Level of 25, i.e. twelve months above the top of the Guidelines for a Category V.

The statutory maximum for Count One was forty years' imprisonment, 21 U.S.C. §841(b)(1)(B)(iii), and ten years' imprisonment for Count Eleven, 18 U.S.C. §924(a)(2). The 137 month sentence, just under twelve years, was therefore well under the statutory maximum. And, as the Court stated at sentencing, whether a Category V or VI was applied, the 18 U.S.C. §3553 factors clearly justified a 137 month sentence. Sentencing Tr. 31:14– 32:6; 45:8-13; 46:8-25.

As for the "nature and circumstances of the offense and the history and characteristics of the defendant", §3553(a)(1), the Court observed:

> And there are a lot of people — this is an interesting case where there are a lot of people in support of somebody whose life has been one of crime. And it's balanced to me in terms of what I hear by the fact that he's had a hard time in his life, but there's no question that in this particular case, the nature and circumstances of the offense, which is the first factor that I have to look at, this was an active drug conspiracy. I think the largest in Southern Maryland as far as the federal government is concerned, and the defendant was part of it for a period of time.
>
> This was preceded by a history of crime, whether it was drugs or alcohol, or resisting arrest or violence, and all these guns. To hear that somehow these guns were all there. An arsenal, mind you. I mean, read through what's found in his house. It's not like somebody's carrying a Beretta, has a Beretta. He's got a Glock 10-millimeter, semi-automatic handgun; a .357 Magnum revolver with certain rounds of ammunition. I mean, this is really a significant amount of drugs — of guns.

*Id*. at 44:14 - 45:16. And further:

> This was the largest drug conspiracy in Southern Maryland history as far as we can [know]. I've had all of your confederates, literally all of them before me already. I've seen the scope of what was involved. So, this is not the kind of thing where you sort of weigh it and say, well, I was just a little player here. I don't believe that. I just don't believe it, not on this record.
>
> And the fact that you had all the weapons that you've had, this is not a minor deal. To have you tell me, I never intended to use them, I don't believe that either. You would have used them if you had to. That's why you had them. I wasn't born yesterday. I want you to understand that, and I want your family to understand that.

-8-

*Id*. at 47:13 – 47:25. *See also id*. at 48:24 – 49:21 (discussion of the history and characteristics of the defendant).

The Court proceeded to address other factors under § 3553(a)(2):

> And the idea that somehow you could get gentle treatment given the nature of this conspiracy, what am I saying to all the other people who want to conspire and deal drugs and deal in weapons in Southern Maryland or elsewhere? It's a terrible message for me to send. So, there's the issue of deterring others and promoting respect for law, which are primary factors that I have to take into account.
>
> And then there's you, there's you. I don't know how many times I've sat on this bench. It's been 26 years. Mr. Hall and I go back a long way, state court too, where I've [seen] someone who comes in on the eve, on the cusp of being sentenced and they've found God, and they've changed their ways after a lifetime of crime.
>
> Now, how am I to believe that? You don't even know yourself whether that's true. You don't know whether you'd slip back to your old ways or not. I mean, that's the problem. And what kind of credibility do I give? You say you're a changed man. I hope you are. I don't know.
>
> On this record right now, I'm not prepared to say that you are. I hope you are. You've got a long time to think about it. Right now it's important to get you out of circulation. That's what I look at first. I need to protect the community first. Then we'll look at you individually.

*Id*. at 48:1 - 48:23. Finally, the Court noted the need to sentence Dorsey with "some sort of parity with your confederates", *id*. at 49:22, pursuant to §3553(a)(6). The Court found that Dorsey was "right in there with everybody and in some ways with a little more extensive criminal history." *Id.* at 49:24-25.

In sum, the Court's sentence of 137 months was neither "a complete miscarriage of justice, or . . . inconsistent with the rudimentary demands of fair procedure". *United States v. Mikalajunas*, 186 F.3d 490, 495-96 (4th Cir. 1999).

The Court remains satisfied that its sentence was appropriate and that Dorsey's Motion provides no basis for the Court to revisit its decision.

**V.**

Rule 11(a) of the Rules Governing § 2255 Proceedings provides that the district court "must issue or deny a [C]ertificate of [A]ppealability when it enters a final order adverse to the applicant." A Certificate of Appealability will not issue absent a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court has considered the record in this case and finds that Dorsey has not made the requisite showing. Accordingly, the Court denies a Certificate of Appealability.

**VI.**

For the reasons set forth in Footnote One, Dorsey's Motion to Vacate, treated in part as a Motion to Reduce Sentence, and his Motion for Appointment of Counsel are **DENIED**.

A separate order will **ISSUE**.

                                                  /s/
                               **PETER J. MESSITTE**
                    **UNITED STATES DISTRICT JUDGE**

**February 11, 2014**